UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| MANUEL MARMOL | : | |
| | : | |
| v. | : | C.A. No. 07-297S |
| | : | |
| MICHAEL J. ASTRUE | : | |
| Commissioner of the Social Security | : | |
| Administration | : | |

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Social Security Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"), 42 U.S.C. § 405(g). Plaintiff filed his Complaint on August 8, 2007 seeking to reverse the decision of the Commissioner. On April 2, 2008, Plaintiff filed a Motion to Reverse without a Remand for a Rehearing or, Alternatively, with a Remand for a Rehearing the Commissioner's Final Decision. (Document No. 14). On May 2, 2008, the Commissioner filed a Motion for an Order Affirming the Decision of the Commissioner. (Document No. 15). Plaintiff replied on May 16, 2008. (Document No. 16).

This matter has been referred to me for preliminary review, findings and recommended disposition. 28 U.S.C. § 636(b)(1)(B); LR Cv 72. Based upon my review of the record, the legal memoranda filed by the parties and independent legal research, I find that there is substantial evidence in this record to support the Commissioner's decision and findings that the Plaintiff is not disabled within the meaning of the Act. Consequently, I recommend that the Commissioner's

Motion for an Order Affirming the Decision of the Commissioner (Document No. 15) be GRANTED and that Plaintiff's Motion to Reverse without a Remand for a Rehearing or, Alternatively, with a Remand for a Rehearing the Commissioner's Final Decision (Document No. 14) be DENIED.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for DIB on September 30, 2004 (Tr. 42-44) alleging disability since January 16, 2004 due to "arthritis of back" and a herniated disc. (Tr. 103). Plaintiff's application was denied initially (Tr. 51-53) and on reconsideration. (Tr. 56-58). Plaintiff requested an administrative hearing. (Tr. 59). On August 23, 2006, Administrative Law Judge Martha Bower ("ALJ") held an initial hearing. (Tr. 282-289). A supplemental hearing, also before ALJ Bower, was held on September 18, 2006 at which Plaintiff, represented by counsel, and a vocational expert ("VE"), appeared and testified. (Tr. 290-310). The ALJ issued an unfavorable decision on October 2, 2006 finding that Plaintiff was not disabled. (Tr. 20-26). Plaintiff then filed a request for review (Tr. 11) which the Appeals Council denied on June 20, 2007. (Tr. 5-7). A timely appeal was then filed with this Court.

## II. THE PARTIES' POSITIONS

Plaintiff argues that the ALJ failed to properly apply the treating physician rule and improperly considered his demeanor at the hearing. Plaintiff also argues that the Appeals Council erred in failing to review new medical evidence.

The Commissioner disputes Plaintiff's claims and argues that the ALJ correctly weighed the medical opinion evidence; and contends that the Commissioner's final decision should be affirmed as it is supported by substantial evidence and based upon a proper application of the law.

## III. THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause

for failure to submit the evidence at the administrative level. See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant. Id. With a sentence six remand, the parties must return to the court after remand to file modified findings of fact. Id. The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings. Id.

## IV. THE LAW

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A. Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments, is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported

by objective medical evidence or is wholly conclusory. See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. See 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner. 20 C.F.R. § 404.1527(e). See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

**B. Developing the Record**

The ALJ has a duty to fully and fairly develop the record. Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991). The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained. See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987). The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. Id. However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

**C. Medical Tests and Examinations**

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision. Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

**D. The Five-step Evaluation**

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not

disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. Seavey, 276 F.3d at 5. The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3), 423(a), (c). If a claimant

becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. Id.

### E. Other Work

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. Seavey, 276 F.3d at 5. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids"). Seavey, 276 F.3d at 5. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. Id.; see also Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills. Nguyen, 172 F.3d at 36. In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. Heggarty, 947 F.2d at 996. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-

exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

**1. Pain**

"Pain can constitute a significant non-exertional impairment." Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

(1) The nature, location, onset, duration, frequency, radiation, and intensity of any pain;

(2) Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);

(3) Type, dosage, effectiveness, and adverse side-effects of any pain medication;

(4) Treatment, other than medication, for relief of pain;

(5) Functional restrictions; and

(6) The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986). An individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

**2. Credibility**

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Rohrberg, 26 F. Supp. 2d at 309. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. See Frustaglia, 829 F.2d at 195. The failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

**V. APPLICATION AND ANALYSIS**

Plaintiff was fifty-eight years old on the date of the ALJ's decision. (Tr. 20, 74). Plaintiff has an eighth-grade education with past relevant work as a maintenance worker and a tailor. (Tr. 20, 103-104, 306). Plaintiff suffers from low back pain and a herniated disc. (Tr. 20, 103).

Plaintiff was seen by Dr. Jay Burstein at St. Joseph Hospital on January 20, 2004. (Tr. 216). Plaintiff reported that he injured his back on January 16, 2004 while operating a jackhammer. Id. Dr. Burstein noted that Plaintiff walked with a normal gait. Id. There was palpable tenderness through the left mid- and lower-parathoracic area. Id. The impression was work-related

thoracolumbar muscular strain injury. Id. Dr. Burstein recommended that Plaintiff perform stretching exercises. Id. He was cleared for "modified activity" or light duty. Id. Plaintiff returned to St. Joseph Hospital on January 26, 2004 with reports of minimal relief of his discomfort. (Tr. 219). Dr. Burstein observed that straight, leg-raise testing was negative and that there was minimal tenderness at his back. Id. Dr. Burstein maintained the impression of work-related thoracolumbar strain injury. Id. Plaintiff was referred to physical therapy and again cleared for light duty. Id.

Plaintiff returned to St. Joseph Hospital on February 2,2004 reporting that pain extended into his left leg. (Tr. 221). Dr. Burstein found that Plaintiff's motor and sensory examinations were normal. Id. Dr. Burstein cleared Plaintiff to perform modified duty: no lifting more than ten pounds and no repetitive bending or twisting. Id. An x-ray taken of Plaintiff's lumbosacral spine showed no fracture or abnormality. (Tr. 224). A workers' compensation IME performed on February 5, 2004 found "no objective findings to suggest that [Plaintiff] has a serious back injury" and that "[t]he history and examination support the diagnosis of a simple lumbar strain that should respond to conservative treatment." (Tr. 215). After examining Plaintiff on February 9, 2004, Dr. Burstein informed Plaintiff that he had a strain of his back muscles. (Tr. 225). He increased Plaintiff's lifting limit to twenty to twenty-five pounds. Id.

On February 23, 2004, Plaintiff returned to St. Joseph Hospital reporting increased pain. (Tr. 227). Dr. Burstein commented that, although Plaintiff had made objective improvement, he demonstrated muscle guarding (holding his back). Id. On examination, Dr. Burstein noted limited range of motion. Id. Plaintiff had diffuse tenderness through the lower and mid back, with no obvious spasm. Id. The neurologic examination was normal. Id. Dr. Burstein advised Plaintiff that maintaining normal activity and exercising would be better than limited activity. Id. By March 9,

2004, Plaintiff demonstrated full range of motion of his lumbar spine. (Tr. 233). His physical examination was normal. Id. Dr. Stutz noted no objective findings and released Plaintiff to return to work. Id.

Plaintiff went to the Emergency Room at Roger Williams Medial Center on March 15, 2004, with complaints of back pain. (Tr. 135). Dr. Michael Bonitati noted that Plaintiff had good range of motion of all extremities and full muscle strength. Id. There was diffuse tenderness at the paravertebral spine. Id. Plaintiff changed positions without pain and the straight-leg raise test was negative. Id. Dr. Bonitati noted that Plaintiff could sit and cross his legs at his ankles without difficulty. (Tr. 136).

On March 18, 2004, Plaintiff began chiropractic treatment with Arianna Iannuccilli, D.C. (Tr. 149). Dr. Iannuccilli found severe spasms upon palpitation at the L2, L3, L4 and L5 spinal levels. Id. She also found that Plaintiff had an antalgic gait and positive straight-leg raise test. Id. Her assessment was thoracolumbar sprain/strain with myalgia and lower extremity radiculopathy. Id. Her treatment plan was to apply spinal manipulation to restore mobility. Id. Plaintiff's course of treatment with Dr. Iannuccilli (or a colleague, Kymberly Williams, D.C.) spanned through February 18, 2005. (Tr. l51-l86).

Dr. Williams had Plaintiff undergo an MRI of his lumbar spine. The examination, performed on June 3, 2004, showed no disc herniation, spinal canal narrowing or foraminal narrowing. (Tr. 138). There was very minimal disc bulging at L4-L5. Id.

Plaintiff saw Dr. Kenneth Morrissey on December 13, 2004. (Tr. 133). Dr. Morrissey noted that Plaintiff ambulated without an antalgic gait. Id. There were no spasms at Plaintiff's back, and he was able to get on and off the examination table without difficulty. Id. Straight leg raising was

negative, and Plaintiff had full motor strength. Id. Dr. Morrissey's impression was chronic back pain with no focal neurological findings. (Tr. 134).

Dr. John Bernardo, a state agency physician, reviewed Plaintiff's medical files and issued an assessment on February 1, 2005 of his functional duties. (Ex. 4F). Dr. Bernardo found that Plaintiff could lift/carry up to twenty pounds occasionally and ten pounds frequently. (Tr. 142). He determined that Plaintiff could sit, stand and walk for six hours out of an eight-hour workday. Id. Dr. Bernardo precluded Plaintiff from climbing ladders or scaffolds or crawling. (Tr. 143). Plaintiff was also to avoid concentrated exposure to extreme temperatures. (Tr. 145).

Dr. Williams prepared a report for Plaintiff's attorney on February 18, 2005. (Tr. 187). She relayed his medical history and noted that Plaintiff's lumbar range of motion was normal. Id. She also noted sacroilliac joint compression, but observed no restriction at that joint. Id. Her diagnostic impression was resolved thoracolumbar strain/sprain. (Tr. 188). She felt that Plaintiff had been reached maximum medical improvement and discharged him from her care. Id.

Dr. Edward Hanna, another state agency physician, issued an assessment of Plaintiff's functional abilities on April 26, 2005. (Ex. 6F). He deemed Plaintiff capable of lifting up to twenty pounds occasionally and ten pounds frequently. (Tr. 195). Dr. Hanna limited Plaintiff to occasional climbing, balancing and stooping. (Tr. 196). He also restricted Plaintiff from concentrated exposure to extreme cold. (Tr. 198).

Dr. Emilio Rodriguez-Peris saw Plaintiff on September 19, 2005 for complaints of low back pain. (Tr. 246). Dr. Rodriguez-Peris found Plaintiff to be neurologically intact and that his motor and reflexes were normal. (Tr. 247). Plaintiff again saw Dr. Rodriguez-Peris on May 24, 2006. (Tr. 253). Plaintiff maintained his complaint of low back pain. Id. Plaintiff returned to Roger Williams

Medical Center on May 28, 2006. (Tr. 204). He reported increased back pain. Id. Dr. Jessica Sims found that Plaintiff had no bony tenderness at his spine. Id. She did find some tenderness upon deep palpitation of the left paraspinal area. Id. She diagnosed Plaintiff with low back musculoskeletal pain. Id.

The next visit to Dr. Rodriguez-Peris, dated June 7, 2006, was unremarkable, as Plaintiff had no new complaints, and Dr. Rodriguez-Peris made no new findings. (Tr. 255). That same day, Dr. Rodriguez-Peris completed an assessment of Plaintiff's functional abilities. (Tr. 258). He felt that Plaintiff could sit, stand, or walk for one hour, total, in an eight-hour workday. Id. Dr. Rodriguez-Peris opined that Plaintiff could occasionally lift up to twenty-one to twenty-five pounds. Id. He restricted Plaintiff from bending, squatting, crawling or climbing. Id.

The ALJ decided this case adverse to Plaintiff at Step 4. (Tr. 26). The ALJ found that Plaintiff's back disorder limited him to light work with restrictions on repetitive climbing, stooping, kneeling, crouching or crawling. Id. Her RFC also precluded concentrated exposure to temperature extremes. Id. Based on this RFC and the VE's testimony, the ALJ concluded that Plaintiff's back disorder did not prevent him from performing his past relevant work as a tailor. (Tr. 25-26).

**A. Plaintiff Has Not Presented a Reviewable Appeals Council Decision**

Plaintiff contends that the Appeals Council erred in refusing to remand based upon additional evidence submitted after the ALJ's decision. (Tr. 8, 266-281). In particular, Plaintiff points to a medical report by Dr. Cristobal Sanchez Metz dated November 14, 2006. (Tr. 272-273). Plaintiff asserts that this report provided to his attorney is "new and material evidence" that should be considered upon judicial review.

Generally, the discretionary decision of the Appeals Council to deny a request for review of an ALJ's decision is not reviewable. A judicial review under 42 U.S.C. § 405(g) is typically focused on the findings and reasoning of the ALJ, i.e., whether the ALJ's findings are supported by substantial evidence and whether the ALJ has properly applied the law. Of course, it makes no sense from an efficiency standpoint for a reviewing court to spend time and resources critiquing the work of the Appeals Council when it has jurisdiction to review the underlying and operative ALJ decision. In other words, reversible error by an ALJ can be remedied by the Court regardless of what the Appeals Council did or did not do.

The First Circuit has, however, held that review of Appeals Council action may be appropriate in those cases "where new evidence is tendered after the ALJ decision." Mills v. Apfel, 244 F.3d 1, 5 (1st Cir. 2001). In such cases, "an Appeals Council refusal to review the ALJ may be reviewable where it gives an egregiously mistaken ground for this action." Id. This avenue of review has been described as "exceedingly narrow." Harrison v. Barnhart, C.A. No. 06-30005-KPN, 2006 WL 3898287 (D. Mass. Dec. 22, 2006). Further, the term "egregious" has been interpreted to mean "[e]xtremely or remarkably bad; flagrant," Ortiz Rosado v. Barnhart, 340 F. Supp. 2d 63, 67 (D. Mass. 2004) (quoting Black's Law Dictionary (7th ed. 1999)).

Although Plaintiff cites the Mills decision, he makes no attempt to satisfy its rigorous standard and simply argues that the Appeals Council made the "requisite mistake" in failing to consider the proffered new evidence. In this case, the ALJ's decision was rendered on October 2, 2006. After the ALJ issued her decision, Plaintiff hired a new attorney. (Tr. 13). His new attorney obtained the medical opinion in issue on or about November 14, 2006 and submitted it to the Appeals Council. (Tr. 276-278). Dr. Sanchez Metz references Plaintiff's prior treatment at the

Resident's Clinic (affiliated with Roger Williams Medical Center) and opines that Plaintiff's "report" of "severe pain" limits him to sedentary work. (Tr. 272-275). However, this prior treatment is not "new" evidence, as notes from Plaintiff's visits to the Resident's Clinic were included in the record before the ALJ. (Tr. 260-265). Since all or most of the treatment notes upon which Dr. Sanchez Metz based his findings were included in the record, his November 14, 2006 opinion is cumulative. Also, the records indicate that Plaintiff was seen at the Resident's Clinic by Dr. Zarraga and Dr. Braun (Tr. 261, 263, 265) so the record is unclear as to the extent and/or duration of any treating relationship between Plaintiff and Dr. Sanchez Metz.

Since Plaintiff proffered the "new" evidence to the Appeals Council, the Mills test and not the more forgiving Evangelista test applies. See Ortiz Rosado, 304 F. Supp. 2d at 67 n.1. Plaintiff has not established that the Appeals Council was "egregiously mistaken" in its decision to deny Plaintiff's request for review. Plaintiff's original attorney could have sought an opinion from Dr. Sanchez Metz and submitted it to the ALJ before she issued her decision. He did not do so, and the Court must review the ALJ's decision based on the record before her at the time. Further, although the ALJ did not have the opportunity to consider such opinion, she did have all or most of the underlying records when she rendered her decision. Plaintiff has shown no error.

**B. The ALJ Did Not Engage in "Sit and Squirm" Jurisprudence**

Plaintiff contends that the ALJ engaged in so-called "sit and squirm" jurisprudence and impermissibly made a lay-person medical judgment about Plaintiff's condition based on his demeanor at the hearing. See Wilson v. Heckler, 734 F.2d 513, 518 (11th Cir. 1984) (ALJ erroneously found that claimant was not disabled by pain based on observation that he did "not appear to be in great pain at the hearing and no clinical findings supported [his] testimony"). In this

case, the ALJ thoroughly reviewed all of the medical evidence and did not make a "sit and squirm" finding.

Plaintiff focuses on the ALJ's observation that he "sat very comfortably at the hour long hearing and despite being advised he could stand, he never did." (Tr. 24). Plaintiff's attempt to seize on this single observation and elevate its importance in the ALJ's overall analysis is misplaced. The ALJ articulated several reasons for her adverse credibility determination which are supported by the record. For instance, the ALJ noted the inconsistencies between Plaintiff's daily activities and the disabling degree of pain alleged, and the lack of support in the medical records. (Tr. 24). Further, the ALJ's observation was not pulled out of thin air. Dr. Rodriguez-Peris opined on June 7, 2006 that Plaintiff could not sit for more than one hour at a time and for more than one hour total in an "entire 8-hour day" due to low back pain. (Tr. 258). Although the ALJ's observation of a claimant's apparent comfort level at a hearing is not generally entitled to significant weight, see Soto v. Barnhart, 242 F. Supp. 2d 251, 257 (W.D.N.Y. 2003) (such observations given "limited weight"), the observation in this particular case, as well as other relevant evidence, directly called into question the opinion of Dr. Rodriguez-Peris and, in particular, his strict one-hour limits. The ALJ did not err by including Plaintiff's demeanor at the hearing as one factor in her overall assessment of Plaintiff's RFC and credibility.

**C. The ALJ Properly Evaluated the Medical Evidence**

Plaintiff contends that the ALJ erred by not giving controlling weight to the treating physician opinion of Dr. Rodriguez-Peris.[1] As noted above, Dr. Rodriguez-Peris opined that Plaintiff could not sit, stand or walk for more than one hour at a time and one hour total per workday. (Tr. 258). If this opinion were given controlling weight, a disability finding would likely result.

A treating physician is generally able to provide a detailed longitudinal picture of a patient's medical impairments, and an opinion from such a source is entitled to considerable weight if it is well supported by clinical findings and not inconsistent with other substantial evidence in the record. See 20 C.F.R. § 404.1527(d). The amount of weight to which such an opinion is entitled depends in part on the length of the treating relationship and the frequency of the examinations. See 20 C.F.R. § 404.1527(d)(1). If a treating source's opinion is not given controlling weight, the opinion must be evaluated using the enumerated factors and "good reasons" provided by the ALJ for the level of weight given. 20 C.F.R. § 404.1527(d)(2).

The ALJ thoroughly evaluated all of the medical evidence. (Tr. 21-23). As to Dr. Rodriguez-Peris' opinion, she gave it "little weight as it essentially renders [Plaintiff] bedridden due to severe low back pain despite the normal physician examinations, [Plaintiff's] activities, and his being treated with only Ibuprofen." (Tr. 24). In other words, the ALJ did not find Dr. Rodriguez-Peris' opinion to be well supported by clinical findings or consistent with other evidence of record. These are permissible reasons for the ALJ to discredit a treating physician opinion, and since such

[1] Plaintiff also contends that the ALJ erred by failing to give controlling weight to Dr. Sanchez Metz's opinion. However, as noted above, Plaintiff did not present such opinion to the ALJ, and it is not properly before the Court.

reasons are supported by the record in this case, the ALJ's assessment is entitled to deference. A review of Dr. Rodriguez-Peris' contemporaneous treatment notes (Tr. 246-255) simply does not support the significant degree of limitation assessed.[2] The record contains conflicting medical evidence, and Plaintiff has shown no error in the ALJ's RFC assessment of light exertion with no repetitive climbing, stooping, kneeling, crouching or crawling and no concentrated exposure to temperature extremes. The assessment is supported by evidence from treating physicians (Dr. Burstein and Dr. Bonitati), consulting physicians (Dr. Morrissey and Dr. McCloy) and reviewing physicians (Dr. Bernando and Dr. Hanna), and thus is entitled to deference. "The ALJ's resolution of evidentiary conflicts must be upheld if supported by substantial evidence, even if contrary results might have been tenable also." Benetti v. Barnhart, No. 05-2890, 2006 WL 2555972 (1st Cir. Sept. 9, 2006) (per curiam) (citing Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1 (1st Cir. 1987)); see also Castro v. Barnhart, 198 F. Supp. 2d 47, 54 (D. Mass. 2002) ("[An ALJ] may reject a treating physician's opinion as controlling if it is inconsistent with other substantial evidence in the record, even if that evidence consists of reports from non-treating doctors.")

## VI. CONCLUSION

For the reasons stated above, I recommend that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 15) be GRANTED and that the Plaintiff's Motion to Reverse without a Remand for a Rehearing or, Alternatively, with a Remand

---

[2] Plaintiff also contends that Dr. Rodriguez-Peris' opinion is supported by the records of Dr. Iannuccilli. (Document No. 14 at 5). In particular, Dr. Iannuccilli's 2004 findings of "moderate tenderness" and "spasms." (Tr. 149-189). Plaintiff, however, misidentifies Dr. Iannuccilli as a medical doctor. She is a chiropractor. Although entitled to consideration, a chiropractor is not an "acceptable medical source." 20 C.F.R. § 404.1513(d). The ALJ properly considered this evidence and accurately noted that the examination findings of Plaintiff's chiropractors "were not reflected in examinations by medical doctors or physical therapists." (Tr. 24).

for a Rehearing the Commissioner's Final Decision (Document No. 14) be DENIED. I further recommend that Final Judgment enter in favor of the Commissioner.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within ten (10) days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

_________________________________

LINCOLN D. ALMOND
United States Magistrate Judge
June 24, 2008